In re:                          }

**Terry W. Graves and**       }     **CASE NO.    06-40845-JJR-13**

**Christy L. Graves,**         }

                             }

          **Debtors.**       }     **CHAPTER:  13**

                             }

---

**Terry W. Graves and**       }

**Christy L. Graves,**         }

                             }

          **Plaintiff(s),**   }     **ADV. P. NO.: 06-40134**

                             }

**v.**                           }

                             }

**First Educators Credit Union,**   }

                             }

          **Defendant(s).**   }

                             }

## <u>MEMORANDUM OPINION ON DEFENDANT'S MOTION TO DISMISS</u>

On June 21, 2006, Terry W. Graves and Christy L. Graves ("Debtors") filed a petition for relief under Chapter 13 of the Bankruptcy Code (11 U.S.C. § 101 *et seq*, and herein the "Bankruptcy Code"). On September 13, 2006, the Debtors commenced this adversary proceeding against one of their secured creditors, First Educators Credit Union ("FECU"). In their complaint, the Debtors alleged FECU violated various provisions of the federal Truth In Lending Act (15 U.S.C. § 1601 *et seq,* and herein "TILA") when it made them a loan. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Order of Reference of the District Court. This

1

adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has jurisdiction to enter a final order or judgment herein.

BACKGROUND:

In their Schedule B - Personal Property, filed with their bankruptcy petition, the Debtors listed a 2001 Ford Mustang (the "Mustang") as one of their assets and valued it at $5,960.00. In their Schedule D - Creditors Holding Secured Claims, the Debtors listed FECU as one of their secured creditors. The Debtors scheduled FECU's claim at $7,107.21 and stated it was secured by the Mustang. However, they valued the Mustang at only $5,960.00 and, therefore, scheduled FECU's claim as secured for $5,960.00 and the balance of $1,147.21 as an unsecured claim. In Schedule D the Debtors asserted FECU's debt was CONTINGENT, UNLIQUIDATED and DISPUTED. [1]

On July 10, 2006, FECU filed a proof of claim in the Debtors' case. In its proof of claim, FECU stated the Debtors owed it $7,136.57 for the purchase money loan (the "Loan") used by the Debtors to acquire the Mustang. FECU claimed to be fully secured with a perfected purchase money security interest in the Mustang. Attached to the proof of claim were copies of the Truth In Lending Disclosure, the Credit Union Promissory Note/Security Agreement, the Agreement to Furnish Insurance, and the Certificate of Title covering the Mustang. The Certificate of Title listed FECU as the first and only lienholder.

The original Chapter 13 Plan ("Original Plan"), filed by the Debtors on June 21, 2006,

_____

[1]The Debtors scheduled seven secured, one priority, and seven unsecured debts. They checked the CONTINGENT, UNLIQUIDATED and DISPUTED boxes in their descriptions of each of these claims except the secured claim of American General Financial. There is nothing in the Debtors' Schedules, Statement of Financial Affairs, Chapter 13 plans, or other documents and pleadings that further described the basis for their assertion that all but one of their debts were contingent, unliquidated and disputed.

2

reflected FECU's debt exactly as shown in the Debtors' schedules. The Original Plan proposed to pay secured claims in full but offered nothing on unsecured claims. Thus, under the Original Plan, the Debtors did not intend to pay any of the $1,147.21 shown as the unsecured portion of FECU's debt. They proposed to pay the secured portion of FECU's claim over the 60 month plan term with fixed monthly payments of $131.79 per month.

On June 26, 2006, the Debtors filed a Motion For Valuation of Assets ("Valuation Motion"). In their Valuation Motion, the Debtors asked the Court to find the value of the Mustang securing FECU's debt was the same value stated in the Debtors' schedules, i.e. $5,960.00. Also on July 26, 2006, the Debtors filed an amended Chapter 13 Plan ("First Amended Plan") in which they increased the total amount of FECU's debt to $7,136.57 (the amount shown in FECU's proof of claim), and they increased the amount of the unsecured portion of the debt to $1,176.57. The First Amended Plan, like the Original Plan, did not propose to pay anything to unsecured claimholders.

At this stage in the Debtors' Chapter 13 case, FECU and the Debtors held differing positions regarding the value of the Mustang and the treatment of FECU's claim: the Debtors' position was that FECU's claim was only partially secured, as reflected in the Debtors' Schedules B and D, the First Amended Plan, and the Valuation Motion; and FECU's position was that its claim was fully secured as reflected by its proof of claim, which constituted prima facie evidence of the validity and amount of its claim under Rule 3002(f) of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P."). Their differences were significant because any unsecured portion of FECU's claim would not be paid under the provisions of the First Amended Plan.

On August 8, 2006, the Debtors filed a Notice of Dismissal of the Valuation Motion and filed another amended Chapter 13 Plan ("Second Amended Plan"). There is nothing in the record to

3

indicate if the Notice of Dismissal and the Second Amended Plan were the product of a negotiated settlement between the Debtors and FECU or evidence of an acquiescence by the Debtors to FECU's valuation of the Mustang.[2]  In any event, under the Second Amended Plan,  FECU's debt was treated as fully secured, and the Mustang's value was increased to $7,136.57, the exact amount of FECU's debt stated in its proof of claim.  Also, the proposed fixed monthly payments to FECU increased to $157.81 to pay FECU's fully secured claim.

On August 9, 2006, and again on August 11, 2006, the Debtors filed further amended Chapter 13 Plans, neither of which changed the treatment of FECU's claim from that proposed in the Second Amended Plan.  On September 5, 2006, the Court entered a Confirmation Order, confirming the Debtors' Chapter 13 Plan as last amended (the "Confirmed Plan").  The Confirmation Order instructed the Chapter 13 Trustee to pay the secured claim of FECU as proposed in the Confirmed Plan, i.e. monthly payments in the amount of $157.81 each.

The Debtors' TILA claims against FECU were not listed in their original Schedule B - Personal Property filed with their petition for relief.  However, in their original Schedule B under line item 19, the Debtors did list as an asset "POTENTIAL CLAIMS V LISTED CREDITORS" and stated the value of these claims was "$4,905.00."[3]  In their original Schedule C - Property Claimed

---

[2]  It is likely the Motion to Value was settled because FECU's secured claim was immune from valuation pursuant to the hanging paragraph following Section 1325(a)(9) of the Bankruptcy Code.  The debt was incurred September 8, 2004, within 910 days preceding the date the petition was filed.

[3]Line item 19 in Schedule B requires a debtor to described the following types of property:  "Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property."  It appears that causes of action, counterclaims and rights of set off which might be asserted against the claims of creditors would more accurately fall within the definition found in line item 21:  "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the

4

As Exempt, the Debtors claimed the $4,905.00 value attributable to their "POTENTIAL CLAIMS V LISTED CREDITORS" as exempt. Similarly, the Debtors' Original Plan and each amended plan, including the Confirmed Plan, contained a provision that read, "Debtor's [sic] potential/possible claims v listed creditors survive confirmation. Debtor [sic] offers any non-exempt proceeds to the trustee."

On October 12, 2006, almost a month after this adversary proceeding was filed, the Debtors amended their Schedule B by adding to their property description under line item 19, "LAWSUIT AGAINST 1ST EDUCATORS CREDIT UNION" and listed the value of the lawsuit at $4,905.00. They also amended their description of exemptions on Schedule C by substituting "LAWSUIT AGAINST 1ST EDUCATORS CREDIT UNION" for the original description of "POTENTIAL CLAIMS V LISTED CREDITORS." The value attributed to the claimed exemption remained at $4,905.00.

On September 13, 2006, eight days after entry of the Confirmation Order, the Debtors filed their complaint against FECU alleging that when FECU made them the Loan, FECU violated various provisions of TILA and Regulation Z,[4] as promulgated by the Board of Governors of the Federal Reserve System to implement TILA. Specifically, the Debtors' complaint states that FECU failed to comply with the requirements of Regulation Z § 226.4(d) for the exclusion of credit insurance charges from the Finance Charge and that FECU failed to disclose it was retaining a portion of credit insurance premiums which should have been included in the Finance Charge and calculation of the APR. In response to the complaint, FECU filed a Motion to Dismiss in which it asserted the

---

debtor, and rights to setoff claims. Give estimated value of each."

[4]12 C.F.R. § 226 *et seq*.

adversary proceeding should be dismissed because the Debtors' claims were barred due to the expiration of TILA's one-year statute of limitations and under the doctrine of claim preclusion. Although not raised in the Motion to Dismiss, in its brief, FECU also argues the adversary proceeding should be dismissed under the doctrine of judicial estoppel.[5]

## STATUTE OF LIMITATIONS:

According to the Debtors' complaint, the Loan from FECU was made on or about September 8, 2004, over 22 months before the Chapter 13 petition was filed and over two years before this adversary proceeding was commenced. Subsection 1640(e) of Title 15 requires that claims for TILA violations must be commenced "within one year from the date of the occurrence of the violation." In this case, any violation would have occurred on the date the credit transaction between the Debtors and FECU was consummated, i.e. September 8, 2004, when the Loan was made by FECU to the

---

[5]Even if judicial estoppel had been property raised in FECU's Motion to Dismiss, it would not apply in this case. Judicial estoppel guards the integrity of the judicial process by prohibiting a party from taking a position which is inconsistent with his position in a separate, usually earlier proceeding. *Ex parte First Ala. Bank*, 883 So. 2d 1236, 1241 (Ala. 2003), *quoting Jinright v. Paulk*, 758 So. 2d 553, 555 (Ala. 2000). For judicial estoppel to apply, the court should find the party is attempting to wrongfully conceal his inconsistent position from the court and other litigants for the purpose of gaining some advantage or benefit to which he would not be entitled if he was required to maintain his original position. *See In re Peagler*, 307 B.R. 270, 274-5 (Bankr. M.D. Ala. 2002) For example, if a debtor in his bankruptcy schedules states he has no causes of action which might lead to a monetary recovery, and after the bankruptcy case is closed, he files suit on an undisclosed cause of action, he should be estopped from pursuing the claim. Otherwise, the integrity of the bankruptcy process, which requires the disclosure of all a debtor's assets, including his causes of action, is compromised, and a mockery is made of the judicial system. *Id.* at 275. In this case, although the Debtors might be tardy in raising their TILA claims against FECU, there is no evidence they intentionally concealed their claims from this Court or FECU. It could be argued that by dismissing their Valuation Motion and not filing their adversary proceeding until after confirmation, the Debtors attempted to gain an unfair advantage by appeasing FECU so it would not object to confirmation of their proposed Chapter 13 plan. Inasmuch as the Valuation Motion would have probably failed (see note 2, *supra*), and the Confirmed Plan proposed to pay FECU in full, this would be a weak argument.

6

Debtors for their purchase of the Mustang.  *Smith v. Am. Fin. Sys., Inc.* (*In re Smith*), 737 F.2d 1549,

1552 (11th Cir. 1984).  However in 1980, subsection 1640(e) was amended to take effect October 1,

1982.[6]  The amendment provided, "This subsection does not bar a person from asserting a violation

of this subchapter in an action to collect the debt which was brought more than one year from the

date of the occurrence of the violation as a matter of *defense* by recoupment or set-off in such action,

except as otherwise provided by State law." [emphasis added] 15 U.S.C. § 1640(e).  In its brief filed

in support of its Motion to Dismiss, FECU states the Debtors' TILA claims are still barred by the

one-year statute of limitations because the claims were not asserted defensively.  FECU emphasizes

the Debtors are seeking actual money damages, rather than a reduction of FECU's secured claim

based on theories of recoupment or set-off.

Are the Debtors pursuing their TILA claims against FECU offensively, or are they asserted

defensively as a recoupment or set-off?  The answer to this question is determinative because if the

Debtors can be accurately described as the plaintiffs and FECU as the defendant, then15 U.S.C. §

1640(e) will bar the TILA claims.  On the other hand, if FECU is the plaintiff and the Debtors are

the defendants, then § 1640(e) will allow the Debtors to assert their stale TILA claims defensively

to reduce FECU's claim.  To identify who is the plaintiff and who is the defendant, the Court must

determine which party commenced the original or main action.  If the Debtors commenced the

original or main action, then they cannot be said to have raised their TILA claims defensively.  If

FECU commenced the original action, then § 1640(e) will allow the Debtors to defend FECU's

claim with a recoupment or set-off of TILA damages.  *In re Smith, supra*; *Basham v. Fin. Am. Corp.,*

583 F.2d 918, 927-28 (7th Cir. 1978).

---

[6]PL 96-221, March 31, 1980, 94 Stat.132. §§ 615 (a)(4), 625.

7

In *Smith*, the Eleventh Circuit was faced with the same statute of limitations issue presented in this case, except the TILA claims in *Smith* pre-dated the 1980 amendment to § 1640(e), which codified the right to assert time-barred TILA claims defensively. The circuit court recognized that even before the amendment was effective, courts were divided on whether time-barred TILA claims could be asserted defensively as a recoupment. Before deciding whether it would follow the courts that allowed time-barred TILA claims to be raised defensively, the Eleventh Circuit chose to first determine if the debtor was in fact asserting her TILA claims as a defense under a recoupment theory. In its opinion, the Eleventh Circuit set out the three requirements for time-barred TILA claims to be raised defensively as a recoupment: "(1) the TILA violation and the creditor's debt claim arose from the same transaction, (2) she [the debtor] is asserting her claim as a *defense*, and (3) the 'main action' is timely. All three requirements must be satisfied." *Smith*, 737 F.2d at 1553.

The facts in *Smith* are instructive. One month after filing her Chapter 13 petition, the debtor sent a rescission notice to the secured creditor holding a mortgage on her residence, seeking to rescind the mortgage loan transaction because of a TILA violation. The creditor did not reply to the notice. Thereafter, the debtor scheduled the secured debt as a "disputed claim" and contended she was entitled to rescission and statutory damages. According to the Eleventh Circuit, the creditor "counterclaimed for the amount of the debt" . . . . and "[the debtor] filed a 'counterclaim' to [the creditor's] counterclaim seeking 'recoupment' of monetary damages for violations of TILA from any judgment that might be awarded to [the creditor] on the debt." *Id.* at 1551-52. There is no indication in the *Smith* opinion that the debtor filed a formal objection to the secured claim, other than scheduling it as disputed, or commenced an adversary proceeding against the creditor. Likewise, there is no indication that the creditor filed a proof of claim for its secured debt. It appears the

8

Eleventh Circuit considered the debtor's acts of (i) scheduling the secured claim as disputed, (ii) sending the rescission notice, and (iii) contending (apparently in her bankruptcy schedules) that she was entitled to rescission and statutory damages, were sufficient adversary events to label the debtor as the plaintiff who initiated the main action, and that her claims were not being raised defensively under a theory of recoupment. *Id.* at 1553-54. The court concluded that because the main action was commenced after the lapse of the statute of limitations, the debtor's action for TILA violations was stale. *Id* at 1554.

In paragraph 4 of the complaint in this adversary proceeding, the Debtors alleged, "this adversary proceeding is a counterclaim by way of recoupment against a claim filed by Defendant, as allowed by 15 U.S.C. § 1640(e)." In paragraph 5, the Debtors stated their "complaint includes claims for damages pursuant to the Truth in Lending Act . . . to recover actual damages, statutory damages, and costs including reasonable attorney fees . . . ." At the end of their complaint, the Debtors "demand judgment for compensatory and statutory damages . . . ." Thus in their complaint the Debtors take inconsistent positions: They begin with an averment that their action is a counterclaim by way of recoupment, but then they demand a judgment for damages. Finally, recognizing their TILA claims may be time-barred, in their Response to Motion to Dismiss, the Debtors concede their claims are "not raised affirmatively, but as a Counterclaim to the [proof of] Claim filed by FECU."

After considering the history of the Debtors' treatment of FECU's debt, the Court finds the Debtors initiated the original action when they described FECU's claim as contingent, unliquidated and disputed in their Schedule D. Describing FECU's claim in this fashion must be considered a

9

material, adversarial event that places the Debtors in the position of plaintiffs who initiated the main

and original action. When they filed their petition and schedules, the Debtors signed a Declaration

Concerning Debtor's Schedules, in which they declared under penalty of perjury that they had read

the schedules and that they were true and correct to the best of their knowledge, information, and

belief. At the bottom of their Declaration was a warning that making a false statement carries a fine

up to $500,000 or imprisonment of up to 5 years or both. Similarly, the Debtors' petition was signed

and filed by their attorney. Fed. R. Bankr. P  9011(b) provides that:

> "By presenting to the court ... a petition, pleading, written motion, or other paper, an
> attorney or unrepresented party is certifying that to the best of the person's
> knowledge, information, and belief, formed after an inquiry reasonable under the
> circumstances, – (1) it is not being presented for any improper purpose, such as to
> harass or to cause unnecessary delay or needless increase in the cost of litigation; (2)
> the claims, defenses, and other legal contentions therein are warranted by existing
> law or by a nonfrivolous argument for the extension, modification, or reversal of
> existing law or the establishment of new law; (3) *the allegations and other factual
> contentions have evidentiary support or, if specifically so identified, are likely to
> have evidentiary support after a reasonable opportunity for further investigation or
> discovery*; and (4) the denials of factual contentions are warranted on the evidence
> or, if specifically so identified, are reasonably based on a lack of information or
> belief." [emphasis added].

Thus, the description of FECU's claim as contingent, unliquidated and disputed should have been

taken seriously by FECU, especially in light of the penalties for filing false schedules and the implied

representations by counsel.

The Court is mindful that some courts have recognized a debtor's right to pursue claims

based on time-barred TILA violations as defensive actions in response to proofs of claim filed by

creditors.[7] But even if this Court was inclined to follow those courts, it remains bound by Eleventh

---

[7] *See e.g., Woolaghan v. United Mortgage Serv., Inc. (In re Woolaghan)*, 140 B.R. 377,
383-84 (Bankr. W.D.Pa. 1992) and cases cited therein. "The TILA claim was not asserted as an

Case 06-40134-JJR   Doc 26   Filed 03/14/07   Entered 03/14/07 10:16:11   Desc Main
Document    Page 10 of 21

Circuit precedent. That precedent does not allow a time-barred TILA claim to be pursued in a "main action" initiated by the debtor, and the result is the same whether the stale TILA claim is asserted as a recoupment or set-off.[8]

In the case now before the Court, the Debtors were the first to throw down the gauntlet when they filed their petition for relief and schedules on June 21, 2006 and asserted FECU's debt was contingent, unliquidated and disputed. These assertions could not have been directed at the subsequent conflict over the value of FECU's security or the amount of its claim. The differences between the Debtors' and FECU's valuations of the Mustang and amount of FECU's debt were not made issues until after FECU filed its proof of claim on July 10, 2006. If the Debtors' assertions about FECU's debt being contingent, unliquidated and disputed were not based on TILA violation, what were they based on? Neither the Court nor FECU should have to guess. In light of the penalties for filing false bankruptcy schedules and Fed. R. Bankr. P. 9011, the Court must assume the assertions directed at FECU's debt were not made arbitrarily or without some legal and factual basis. Since nothing other than the alleged TILA violations has come to the attention of the Court to justify the Debtors' initial attack on FECU's debt as being contingent, unliquidated and disputed, the Court finds that the main or original action was commenced by the Debtors when they filed their schedules. FECU's proof of claim would not have been the main action, but rather could best be

---

independent cause of action, but instead as a response to UMS's proof of claim in order to limit the extent of recovery by UMS on its claim. Thus, the Debtors raised the TILA violations as a defense to the proof of claim filed by UMS. . . . . [T]he 'main' action is the filing of UMS's proof of claim, since it was this filing which initiated the subject objection." *Id.* at 384.

[8] *In re Smith*, ". . . Smith cannot maintain her claim for monetary damages whether that claim is classified as a recoupment or as a setoff." 737 F.2d at 1553.

11

described as a counterclaim to the sweeping challenge made to its debt by the Debtors in their schedules as later and more particularly set forth in their adversary complaint.

The Debtors might argue the assertion in their schedules that FECU's debt was contingent, unliquidated and disputed was based not on TILA violations, but on something else that they later decided not to pursue, or perhaps they were anticipating a difference in their valuation of the Mustang and that of FECU. However, even if such an argument was successfully made, FECU's motion to dismiss should still be granted for the additional reasons discussed below.

CLAIM PRECLUSION:[9]

The Debtors' Confirmed Plan proposed to pay FECU's secured claim in full and raised no specific objection, reservation or defense to FECU's claim. FECU argues confirmation of the Debtors' Chapter 13 plan precludes the Debtors from pursuing their post confirmation adversary proceeding attacking FECU's debt based on alleged TILA violations.

Claim preclusion requires the fulfillment of four conditions: "(1) the prior judgment must be valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process; (2) the judgment must be final and on its merits; (3) there must be identity of both parties or their privies; and (4) the later proceeding must involve the same cause of action as involved in the earlier proceeding." *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1549 (11th Cir. 1990). From a review of the Debtors' petition for relief and accompanying schedules and statement of affairs, the Confirmed Plan, the complaint in this adversary proceeding, FECU's Motion

---

[9]Claim preclusion is a more contemporary label for *res judicata.*

Case 06-40134-JJR   Doc 26   Filed 03/14/07   Entered 03/14/07 10:16:11   Desc Main
Document      Page 12 of 21

to Dismiss, and the Court's file maintained in this case, there can be no doubt that consideration and confirmation of the Debtors' Confirmed Plan was within the jurisdiction of this Court, and that timely and sufficient notice of the contents of the Confirmed Plan and the confirmation hearing satisfied the requirements of the Bankruptcy Code, the Fed. R. Bankr. P. and due process. Thus the first condition required by *Justice Oaks* for claim preclusion was satisfied. As to the second condition, the Confirmation Order confirming the Confirmed Plan was entered September 5, 2006 and there was no appeal from that order, which is now final. FECU as a secured creditor, and the Debtors were both parties to the Confirmed Plan and at the confirmation hearing, thereby satisfying the third condition. That leaves only the fourth condition for consideration. Neither the Confirmed Plan nor the Confirmation Order mentioned the TILA violations. Nonetheless, as required by Section 1325(a)(5) of the Bankruptcy Code, the Debtors' Chapter 13 plan and the confirmation hearing both dealt with the Debtors' treatment of secured claims, including the secured Loan owing to FECU. There is nothing in the record indicating the requirements of Section 1325(a)(5) were satisfied by FECU's affirmative acceptance of the Debtors' plan prior to confirmation [§ 1325(a)(5)(A)] or that the Mustang was surrendered to FECU [§ 1325(a)(5)(C)]. Rather to satisfy Section 1325(a)(5) in regards to the Loan, the Debtors' proposed to pay FECU equal monthly installments having a value of not less than the allowed amount of FECU's claim. § 1325(a)(5)(B). Under the terms of the Confirmed Plan, FECU's allowed claim equaled the full amount outstanding on the Loan, which was also the value assigned by the Debtors to the Mustang. If the Debtors intended to reduced FECU's claim for TILA violations by asserting such violations as a matter of defense by recoupment or set-off, then the Confirmed Plan should not have proposed to pay the full amount of the Loan. The amount of the Loan owing to FECU as a secured creditor was an issue that

13

had to be resolved under Section 1325(a)(5)(B) before the Debtors' were entitled to confirmation of their proposed plan. Similarly, the amount of the Loan owing to FECU is an issue again raised in this adversary proceeding. Unlike the Confirmed Plan, the Debtors' adversary complaint alleges the Loan should be reduced by recoupment or set-off in the amount of actual and statutory damages awarded for violations of TILA.

In its brief, FECU relies on section 1327(a) of the Bankruptcy Code, which provides, "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Initially the Debtors contested the secured amount of FECU's claim, but before their plan was confirmed, the Valuation Motion was withdrawn. The Debtors' Confirmed Plan provided that FECU's fully secured claim in the amount of $7,136.57 was to be paid over the 60 month term of the plan. There is no explanation of why the Debtors waited until after their plan was confirmed to seek a reduction in FECU's allowed, fully secured claim based on TILA violations. The terms of the Confirmed Plan are binding on the Debtors and FECU. If FECU had made an error by under-stating the amount of its secured claim, it is doubtful FECU would have been successful in having its claim increased after confirmation of the Debtors' plan.[10] Why should the Debtors fare any better? "[A] confirmed plan is *res judicata* as to any issues resolved or subject to resolution at

---

[10]*Cf. Universal Am. Mortg. Co. v. Bateman* (*In re Bateman*), 331 F.3d 821 (11th Cir. 2003). In *Bateman*, the Eleventh Circuit denied the secured creditor's motion to dismiss a Chapter 13 case because the amount of the creditor's deficiency claim was under-stated in the confirmed plan. The court held the *res judicata* effect of 11 U.S.C. § 1327 prohibited the creditor from raising the issue after confirmation, even though the flaw in the debtor's plan would have been grounds for denying confirmation if it had been timely raised. Nonetheless, the court held the unpaid balance of the deficiency remaining after completion of the plan was not extinguished but remained secured by the creditor's mortgage.

14

the confirmation hearing. Among these issues is the amount of a secured claim. Under §

1325(a)(5)(B)(ii), a chapter 13 plan must pay the full value of any allowed secured claim. . . .

Accordingly, the value of a secured claim is fixed as of the effective date of the plan." *In re Gomez,*

250 B.R. 397, 399 (Bankr. M.D. Fla. 1999), *citing In re Dunlap,* 215 B.R. 867, 869 (Bankr. E.D.

Ark. 1997).

The Debtors argue that the references in the Confirmed Plan and Schedule B to

"potential/possible claims v. listed creditors survive confirmation" provided sufficient notice to

preserve their counterclaim after confirmation.[11] The Debtors' sweeping and vague description of

potential and possible claims against creditors who are not specifically identified is not sufficient to

preserve their claims against FECU for TILA violations. The Debtors did amend their Schedules

B and C by specifically listing a "Lawsuit against 1st Educators Creditor Union" and setting its value

at $4,905.00. Whether these amendments were sufficient to preserve the TILA claims is not an

issue: the amendments were made after confirmation and after this adversary proceeding was

commenced. "[A] confirmed plan has *res judicata* effect only to the extent its provisions *give clear*

*notice to creditors* and any other interested parties that the plan will have the claimed effect."

[emphasis added] *Bilal v. Household Fin. Corp. III (In re Bilal)*, 296 B.R. 828, 836 (Bankr.

D.Kansas. 2003). "The vague blanket reservation of rights clause is insufficient notice to creditors

to satisfy due process," and "[t]he three circuits that have spoken on this issue have each held that

a blanket reservation of rights clause is ineffective." *Am. Gen. Fin., Inc. v. Tippins (In re Tippins),*

---

[11]The Debtors do not argue that describing FECU's debt in their Schedule D as
contingent, unliquidated and disputed was additional notice of their intent to file a counterclaim
against FECU's claim after confirmation.

221 B.R. 11, 22 (Bankr. N.D. Ala. 1998).

BAPCPA:

The Debtors point out that the amendments to the Bankruptcy Code found in the Bankruptcy

Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") require a hearing on

confirmation of a Chapter 13 plan which usually occurs before the bar date for creditors to file proofs

of claims.[12] The Debtors argue that since the implementation of BAPCPA, proofs of claims are often

filed post confirmation; therefore, authorities such as *In re Bateman*[13] *Justice Oaks, supra, Evabank*

*v. Baxter*[14] and *Tippins, supra*, can no longer be said to support the *res judicata* effect of a confirmed

Chapter 13 plan. However, BAPCPA did not amend Section 1327 of the Bankruptcy Code; the

provisions of a confirmed plan still bind the debtor and each creditor. If a plan adequately identifies

a secured creditor's claim by describing the amount thereof and the proposed terms of payment, and

if adequate notice is given to satisfy due process, confirmation binds the debtor and the creditor to

the terms of the plan. 11 U.S.C. § 1327. [15]

---

[12]11 U.S.C. § 1324 provides that a confirmation hearing must be held no later than 45 days after the Section 341(a) meeting of creditors. Fed. R. Bankr. P. 3002(c) requires creditors to file their proofs of claim no later than 90 days after the first date set for the section 341(a) meeting of creditors. Thus, unless the Section 341(a) meeting or confirmation hearing is continued, creditors have at least 45 days after confirmation to file proofs of claim.

[13]331 F.3d 821 (11th Cir. 2003).

[14] 278 B.R. 867 (N.D. Ala. 2002)

[15]Although not at issue here, based on the plain meaning of the language in Section 1327, it is difficult to find any statutory grounds to distinguish the *res judicata* effect of Section 1327 on creditors who file their proofs of claim before confirmation and those who file after confirmation. In *EvaBank v. Baxter,* 278 B.R. 867 (N.D. Ala. 2002)*,* a secured creditor filed its proof of claim before confirmation. In its opinion vacating the Bankruptcy Court's order, the District Court held the debtor was precluded from objecting to the secured claim after

16

As a note of clarification, this Court is not holding that *all* creditors, whether secured or unsecured, who file proofs of claim before confirmation of a Chapter 13 plan are immune from post-confirmation objections to their claims regardless of the basis for the objection. However, this Court is holding that under existing Eleventh Circuit precedent, secured creditors, such as FECU in this case, who have put debtors on notice by filing their claims before confirmation, and whose secured claims are *specifically* dealt with in a proposed plan in a manner that is not at odds with what is reflected in their proofs of claims, have a right to expect objections to their claims will be unequivocally raised, adequately noticed, and litigated before confirmation. Under those circumstances, post-confirmation objections come too late. 11 U.S.C. § 1327(a).[16] Issues associated

---

confirmation of the Chapter 13 plan. The District Court concluded that, "[b]ecause EvaBank's claim was filed before confirmation . . . this Court need not consider the impact of Early Confirmation when a creditor has not filed its claim. This is not what happened here. What happened in this case is within both the facts and law of *Justice Oaks* [*In re Justice Oaks II, Ltd.,* 898 F.2d 1544 (11th Cir. 1990)] and its adoption of the time within which an objection must be made to a claim filed prior to confirmation of a plan." *Id.* at 887-88. Accordingly, even if confirmation was binding only with respect to secured claims for which proofs of claims were filed pre-confirmation, that would not change the result in this case, since FECU's proof of claim was filed before confirmation.

[16] Chapter 13 plans provide for the payment of 100% to 0% of the claims held by the class of creditors holding general unsecured claims. Section 1322(a)(3) of the Bankruptcy Code requires creditors within a particular class to be treated the same. Creditors holding allowed unsecured claims fall within the same class whether their proofs of claim are filed before or after confirmation. A creditor holding a non-priority, general unsecured claim is entitled to receive its pro-rata share of the periodic payments made under the plan reserved for unsecured creditors. The amount of that share is dependent on the total allowed unsecured claims filed in the case before the bar date. A general, unsecured claim, unlike a secured claim, is not specifically dealt with under most plans. Thus, it would be difficult to justify a blanket rule that recognizes *res judicata* as a defense to all post-confirmation objections to unsecured claims filed pre-confirmation. On the other hand, Section 506(a) of the Bankruptcy Code provides that an allowed claim is a secured claim to the extent of the value of the creditor's collateral. Unless a secured creditor accepts a proposed Chapter 13 plan or the debtor surrenders the collateral for such claim, the value of the distributions under the plan to the secured creditor must be no less

17

with the treatment of secured claims under 11 U.S.C. § 1325(a)(5) must be resolved to achieve plan confirmation, and they cannot be revisited post-confirmation by way of subsequent objections to claims or adversary proceedings. "The *prima facie* evidence of a proof [of] claim can be rebutted if the debtor files an objection pursuant to Federal Rule of Bankruptcy Procedure 3007. If an objection is made as to the amount or validity of the claim, the bankruptcy court will conduct a hearing to determine such, and, if appropriate, will disallow the claim. 11 U.S.C. § 502(b). Although § 502(a) does not provide for a time limit to file an objection [to a claim], it must be filed *prior* to plan confirmation." [emphasis in original text] *In re Bateman*, 331 F.3d 821, 827 (11th Cir. 2003), *citing In re Justice Oaks II, Ltd.,* 898 F.2d 1544 (11th Cir. 1990) and *In re Starling*, 251 B.R. 908 (Bankr. S.D. Fla. 2000).

It is conceivable that the early confirmation procedures now dictated by BAPCPA might ultimately be determined to modify the rulings found in *Bateman, Justice Oaks, EvaBank*, *Tippins* and similar cases. Nonetheless, the facts in this case simply do not justify a modification of these pre-BAPCPA rulings. Before confirmation of their Chapter 13 plan, the Debtors focused specifically on FECU's secured debt as evidenced by their description of the debt as being contingent, unliquidated and disputed in their Schedule D, they challenged the value of the Mustang in the

---

than the allowed amount of such claim, i.e. the value of the collateral. 11 U.S.C. § 1325(a)(5). Accordingly, to be eligible for confirmation, a proposed plan must specifically provide for the treatment of each secured claim. If the proposed distributions on a secured claim have a value of less than the amount of such claim because the debtor has reduced the claim by the amount of a recoupment, set-off, counterclaim or other defense, then the plan should so provide in no uncertain terms, and the debtor should object to the secured claim before plan confirmation so the amount of the secured claim can be determined. Inasmuch as Section 1327(a) results in a confirmed plan being binding on the debtor as well as creditors, failure to timely pursue such a reduction of a secured claim precludes the debtor from challenging the claim post-confirmation.

18

Valuation Motion, which was withdrawn, and they amended their Original Plan to increase the amount of FECU's secured claim to the amount sought by FECU in its proof of claim. Moreover, before confirmation, the Debtors must have had some thoughts of possible claims against their "listed creditors," which included FECU, as evidenced by their attempt at reserving these claims with catch-all language in their Chapter 13 plans and original Schedules. There was no allegation that FECU was actively hiding its guilt from the Debtors or that the Debtors could not have discovered the TILA violations prior to confirmation.[17] Under these facts and circumstances, the Debtors are precluded from now seeking to reduce FECU's allowed, secured claim by the amount of any actual or statutory damages the Debtors might otherwise be entitled to receive from FECU's failure to comply with TILA. The Debtors' adversary proceeding is barred by *res judicata* due to confirmation of their Chapter 13 plan, which called for the full payment of FECU's secured claim. 11 U.S.C. §§ 1325(a)(5) and 1327.

## RECONSIDERATION OF CLAIMS:

In paragraph 1 of their complaint the Debtors state "this complaint seeks to determine the extent of a lien, and monetary relief . . . for claims arising out of a consumer credit agreement . . . and to the extent applicable, *constitutes a request for reconsideration of an allowed claim by FECU*." Similarly, in their Response to Motion to Dismiss, the Debtors state "In addition, 11 U.S.C. § 502 and Bankruptcy Rule 3008 provide that any claim may be reconsidered for cause any time before discharge." The Debtors are correct, Section 502(j) of the Bankruptcy Code provides that a claim which has been allowed or disallowed may be reconsidered for cause, and such reconsideration

---

[17]*See Baldwin v. Citigroup, Inc. (In re Baldwin),* 307 B.R. 251 (M.D. Ala. 2004).

19

shall be determined according to the equities of the case.  However, the Debtors have made no

showing of any equitable cause which might be considered by the Court for a reconsideration of the

allowance of FECU's claim.[18]  Additionally, Fed. R. Bankr. P. 3008 permits a party in interest to

*move* for reconsideration of an order allowing or disallowing a claim.  The Debtors' unsupported

requests for reconsideration are found in their complaint and in their brief; they have not filed a

motion seeking reconsideration as required by Rule 3008.

CONCLUSION:

As discussed above, because the claims for TILA violations were raised as a main or original

action initiated by the Debtors, they cannot be described as being asserted defensively, even though

they were subsequently and more particularly described in an adversary proceeding.  Thus, the

Debtors claims against FECU for violations of TILA are due to be dismissed because they were

pursued affirmatively, not defensively, after the lapse of the one-year statute of limitations. 15 U.S.C.

§ 1640(e).  Additionally, even if the TILA claims were not time-barred, the Debtors are precluded

from raising such claims after confirmation of their Chapter 13 plan in which they committed to pay

FECU's secured debt in full without conspicuously reserving rights of recoupment or setoff for TILA

violations.  The provisions of the Confirmed Plan bind the Debtors and their creditors.  11 U.S.C.

§ 1327(a).  Accordingly, FECU's Motion to Dismiss is due to be GRANTED.  A separate judgment

---

[18]  The Bankruptcy Court for the Middle District of Florida listed the following factors to be considered in determining if sufficient cause exist for reconsideration of an allowed claim under Section 502(j):  "(1) the extent and reasonableness of the delay, (2) the prejudice to any party in interest, (3) the effect on efficient court administration, and (4) the moving party's good faith."  *In re Gomez*, 250 B.R. 397, 401 (Bankr.M.D. Fla. 1999).  This is not an exclusive list of factors for a court to consider, and other factors should be considered "according to the equities of the case."  11 U.S.C. § 502(j) (1999).

will be entered in accordance with this Opinion as required by Fed. R. Bankr.P.9021.

Dated:  March 14, 2007

/s/ James J. Robinson

JAMES J. ROBINSON

United States Bankruptcy Judge

21